Our final case is number 19-27-20, Mejia v. Pfister, and we'll begin with Mr. Rose. Good afternoon. Good afternoon, Your Honor. This is Daniel Harawa on behalf of the appellant Michael Mejia. I'd like to introduce third-year law student Christian Rose, who is a member of the Appellate Clinic at Washington University School of Law, who will be presenting the argument under my supervision.  Thank you, Your Honors, and may it please the Court. My name is Christian Rose, and I represent the appellant, Mr. Michael Mejia. This Court should hold that the District Court abused its discretion when it determined that Mr. Mejia was competent to try his own case. This decision resulted in a poorly presented trial that would reasonably have ended differently had Mr. Mejia had counsel. The District Court abused its discretion in failing to recruit counsel for two reasons. First, its stated reasons were both unavailing and unaccompanied by reasoned analysis showing why the District Court believed that Mr. Mejia was able to try his case. Second, it failed to grapple with other considerations that show this case was too complex for Mr. Mejia to litigate, including the imbalance of proving a swearing contest trial where only the plaintiff's witnesses had to appear by videoconference. Mr. Rose, good afternoon. This is Judge Rovner. You face a high hurdle here on abuse of discretion review. There are just far more prisoners and litigants in general who need lawyers than there are lawyers offering pro bono services. I wish it were not so, but it is the reality. Judge Shaddid was certainly aware that it was also in his, the judge's, best interest to have a trial with two lawyers, but he was also aware of the limited supply of pro bono counsel and how best to ration that resource. He weighed things differently than Mr. Mejia would have liked, but is that an abuse of discretion? The abuse of discretion came here, and I think we can analogize it to Walker v. Price, where just as here, the abuse was in not explaining how the factors were relevant to competency to try this particular stage of litigation, which is trial. So I think that in denying Mr. Mejia's first motion for counsel, I think that that might have not been an abuse of discretion by the district court, and that's because the reasons that it might have relied on, it might have reasonably relied on, say, Mr. Mejia's prior litigation experience to show that Mr. Mejia would have been able to spot the legal issues and contest the relevant material facts in order to perhaps survive summary judgment, and that's what happened here. But after summary judgment, the district court just failed to explain the reasoning for why at this advanced stage of litigation, where very few pro se litigants actually get to, counsel was not appropriate. For example, the district court said that Mr. Mejia was able to try his case because he had successfully amended his complaint, obtained discovery, and survived summary judgment. But just as in Walker, the district court failed to explain how any of those factors were relevant to Mr. Mejia's ability to try a case. For example, there's no explanation as to why or how amending a complaint could show that Mr. Mejia was able to try his case. After all, the only reason that Mr. Mejia had to amend his complaint was because his first was so deficient. Additionally, the district court relied on Mr. Mejia's ability to obtain discovery, but Mr. Mejia actually didn't obtain discovery on his own. The district court intervened in order to obtain the limited discovery that Mr. Mejia actually received, and so in so doing, the district court substituted its own competency for Mr. Mejia's. Mr. Mejia was not actually sophisticated enough to conduct discovery on his own. Mr. Rose, let me ask you to react to this. If you think about civil rights litigation that's brought on behalf of those confined on a spectrum, a case like this is on the easier end of the spectrum, is it not? We have a lot of cases, for example, that involve allegations about inadequate medical care or abuse by guards that touch upon tricky eyewitness issues or medical care themselves. In this particular situation, your client needed to present evidence about the circumstances under which he was living that way, and so I tend to look at the success that he had in the litigation, including getting it to trial. His response to the summary judgment motion that was filed is actually quite articulate, remarkably so, and I just, when I think about civil rights litigation on a spectrum, what I worry about is you get right back to the question that Judge Rovner is kind of getting at that, well, your position, it risks having to appoint counsel in all cases that end up going to trial. So I don't think that we have to reach that specific issue here because of all of the other complicating factors. For example, having a trial appear by videoconference, but recently in this court's precedent in Santiago v. Walls, the court relied in large part on two factors, the presence of transfer, which is also present here, and the fact that an Eighth Amendment deliberate indifference claim presented an issue that was too complex for most pro se litigants. Here, the ability of Mr. Mejia to survive summary judgment showed his ability to spot relevant legal issues and to know when to contest material facts, but it doesn't go to what this court has held, is makes it only the case where only the most rare pro se litigants are able to try a case, and that is being able to understand the relevant rules of evidence in order to depose witnesses, conduct examination of witnesses, and that is what happened here. That was a deficiency at trial. So, I don't believe that there would be... Go ahead. Go ahead and finish the thought. I don't believe that there would be any sort of flood of litigation if a plaintiff like Mr. Mejia was found at the judicial court to abuse its discretion in failing to appoint counsel. So, Mr. Rose, let me ask you to follow up. I mean, all of us are looking at, you know, what happens to the demand curve when price goes to zero, right? It reaches infinity. And we've talked before in our case law about the need, in essence, to prioritize. What were Mr. Mejia's claims for damages here? Are you requesting a specific amount? Amount or the components of it. He's describing very unpleasant, I mean, certainly what he describes is actionable conditions. But let me... If I'm the district judge in a district outside of Chicago, I've got to prioritize. And I may want to say that somebody who, for example, has suffered permanent impairment of a limb because of poor medical care or who has been beaten badly by a fellow inmate because a guard was deliberately indifferent to a threat, I might say those are just somehow more... Those are higher priority cases for me. And I've got a limited supply of lawyers. So I certainly agree, Your Honor, that in cases like where a plaintiff would lose a limb, those are certainly egregious cases. And it's important that pro se litigants are adequately represented. Besides the fact that I don't think that there's anything in this court's case law to show that the relative importance of a case would be relevant to whether a plaintiff should be appointed counsel, I would also point out that... You don't think that's... I thought that was pretty evident in the second McKay opinion, but we'll pass by that. So I would just say that I think some of the more important factors in showing why there are structural protections against frivolous litigation has to go with just how complicated it is to get to this stage. There's the Prison Reform Litigation Act. There's motions to dismiss. There's motions for summary judgment. There's settlement conferences. And then finally, we have trial. And here, it was a trial that was to be held by videoconference. It's a very complex case and a very complex trial that I think presents unique situations. And this court's case law has consistently been clear to state that there are no bright line rules and that each plaintiff's case is determined on its own merits. So I think that just holding for Mr. McKay is A, consistent with this court's prior case law, and B, would not result in any sort of flood of litigation. But I also see that I only have one minute remaining. If there are no further questions, I'd like to reserve that final minute for rebuttal. Okay. Very well, Mr. Rose. Ms. Hanson, welcome to you. And you can proceed. Thank you. May it please the court, Christina Hanson, on behalf of defendants at Belize. As this court has recognized, all pro se litigants would benefit from having counsel, particularly at trial. Section 1915E1 of the Prison Litigation Reform Act does not provide the right to trial. And there is no presumption based on that in favor of recruiting counsel, either because of the types of claims or because of the state in which the claims are, in this case at trial. Rather, the district court must consider whether the difficulties of the plaintiff's case, legally and factually, feed his ability to litigate, or here, try the claims. And the district court considered those factors, and it reached a reasonable result. Its decision was not an abusive discretion. Looking at Mr. Mejia's personal capabilities, as he noted in his motion, he had a high school, the equivalent of a high school education. He didn't assert that he had any physical, intellectual, or mental health challenges that might have impeded his ability to litigate his claims, even at trial. And beyond that, as this court noted, he was filing cogent pleadings. He successfully survived summary judgment, and he marshaled all of the evidence at summary judgment that he was going to present at trial. And so the district court had that available to him. Ms. Jackson, Judge Shadid seemed to have lost his patience with Mr. Mejia on several occasions. And while I do not fault him for that, I can see how it was difficult to keep Mr. Mejia on task with his burdens. It does highlight the catch-22 for Mr. Mejia. Doesn't that suggest that he was not competent to try this case on his own? You're referring to the district judge having perhaps lost a little bit of patience during the trial itself? Right. Well, I would start, Your Honor, by noting that we don't look at whether it was an abusive discretion to not to recruit counsel based on the performance at trial, because that decision is made before trial. And so what we look at is the evidence that was on the record at the time the decision was made, which was before trial started. Are you saying that if a defendant came in pro se and spoke gibberish, that we wouldn't look at that in an appeal? Well, we wouldn't look at that to determine whether there was initially an abusive discretion in denying the motion. But if there was an abusive discretion, then we would look at that to determine whether there was actual prejudice to the defendant and whether that prejudice warranted reversal. Well, isn't that what we're looking at here? If there was prejudice that would warrant a reversal? Isn't that what we're looking at? Well, first, we look at whether there was an abusive discretion when the district court decided whether to recruit counsel, which occurred before the trial. To look at it otherwise would be to second guess the district judge's decision based on hindsight. When we look at whether there was initially an abusive discretion, we look at it at the time the decision was made based on the evidence that was in the record and available to the trial judge at the time he decided not to recruit counsel. Well, you know, one of Mr. Mejia's downfalls at trial is that he did not seem to have any concept of the difference between the summary judgment standard, where his facts are assumed to be true, and trial, where he had to prove them. Is there a precedent for appointing counsel in a limited capacity in cases like this one just for broad brush advice, more advice than one can get from the pro se help desk, for instance, but less than full-on representation? Not at the time of trial. This court's precedent has established that there is no continuing obligation on the district judge to continue to consider whether counsel should be appointed. That decision is made, the district court rules on the motions before it, and then it does not have a continuing obligation to continue evaluating the issue. It's not a standing motion for recruitment of counsel, so once the decision is made, there's no obligation on the trial court to continue considering that decision. So do you think most pro se's would know to say to a judge, I have a standing anything? No, but I also don't think that it was necessary in this case, because Mr. Mejia did present the evidence that he needed to present. I don't think his case failed because of the presentation. He did offer his own testimony regarding the conditions of his confinement, offered testimony regarding the gallery lights and how that interfered with his ability to sleep. He also presented two witnesses, and his witnesses were presented by video conference, but the rest of the trial was all in person. The jury, the judge, and the parties were all in the same room, and he was able to present that testimony. He was also able to present his own testimony regarding the fact that he told the defendants about the conditions of his confinement, and he did not receive adequate cleaning supplies to clean them, and he was told that the lights could not be turned off. So he actually did present the evidence that he needed, and it was essentially, you know, his testimony was the evidence that he was presenting. His claims failed because there was conflicting evidence, and the evidence on the other side demonstrated that, you know, defendant Pong's testimony was that it was very rare for feces to be with it, to be found within a cell, and that every cell before transfer was checked for contraband, and during that check, they would have made sure that the sink was working, that the toilet could flush, and that there wasn't, you know, any cleanliness issues that needed to be addressed, and that there were, in fact, inmate quarters who were responsible for helping maintain the cleanliness of the cells. In order to succeed at trial, Mr. Mehal would have had to have established that five different cells that he occupied during the one-year period on which his claims are based were so filthy and covered in feces and blood to rise to the level of an Eighth Amendment violation, and he simply didn't meet that burden, and I don't, based on the record and what evidence was presented at trial, he simply didn't have the evidence to present his claim, and that doesn't, it wouldn't have mattered whether he had counsel. Again, the court only reaches that question. That's the prejudice prong of the decision. The court would first have to find that the district court actually abused its discretion in denying the motion for counsel at the time the motion was made, and it didn't do so here because, as I noted, Mr. Mehal didn't appear to have any problem presenting the case himself as he had demonstrated through the pre-trial phase, but also his claims were not particularly complex. This isn't a case where he was presenting complex medical testimony. He didn't sue doctors who automatically had some technical knowledge that Mr. Mehal didn't have. It was simply a matter of his evidence versus the evidence presented by the defendants, and Mr. Mehal brings up that he was, his prison transfers as a unique circumstance were requiring the recruitment of counsel, but prison transfers are incredibly common, and unless they present a particular hardship, they don't weigh the scale in favor of recruiting counsel, and here the only issue that he raised before the district court with respect to his transfers was that he wouldn't be able to prepare his witnesses for trial, but the district court addressed that in his orders regarding recruitment of counsel and told Mr. Mehal that he could prepare those witnesses, he could raise it at the final pre-trial conference, and there's nothing in the record suggesting that Mr. Mehal did that, and so that doesn't alter the fact that that was addressed by the district court, and finally, the fact that those two witnesses were presented by video conference doesn't change, doesn't make this trial more complex than any other litigation. As I noted, the parties, the jury, and the judge were all in the same courtroom. There were two witnesses that were presented by video conference, and the judge reminded the jury that their testimony should be credited the same way that any party or witness in the courtroom should be credited. This isn't a situation like Walker v. Price where the plaintiff had to find a way to connect with the jury over an electronic medium. He was in the courtroom with the jury and the judge, and so for those reasons, we would ask that you affirm the judgment and not set aside the jury verdict. Okay, very well. Thank you, Ms. Hanson. Mr. Rose, you have a minute. Your Honors, an opposing counsel focused on whether there are facts in other cases where there are more egregious than these in Mr. Mehal's, like his sophistication, and while Mr. Mehal has not alleged any mental deficiencies, the abuse of discretion came when the court failed to consider the factual question about whether Mr. Mehal was actually capable of trying his case, and the district court did not explain those reasons. And additionally, the defendants say this was not a complex case, but like McKay, two attorneys ended up representing the defendants, and along with this court's opinion in Santiago, that belies the claim that the case was not complex. And it's exactly the sort of swearing contest that in Walker prevented Mr. Mehal from probing and proving the credibility of his own witnesses. Now, this case ultimately presents a plaintiff, Mr. McKay, who was immediately in over his head as soon as the case, as soon as trial was looming, and this should have been obvious to the district court based on this court's case law. Holding that the district court abused its discretion, and when it denied counsel, would reaffirm the primacy that this court has focused on in a robust adversarial system for pro se litigants. Your Excellency, or Your Honors, I see that my time has expired if I may briefly conclude. Please. For these reasons, we ask this court to vacate the trial judgment and remand with instructions to appoint Mr. Mehal to counsel. Thank you. Okay, very well. Ms. Hanson, thanks to you and the Attorney General. Mr. Rose, I suspect Mr. Harawa is there. Mr. Harawa, thanks to you and your law school, and most especially Mr. Rose, a special thanks to you, and we hope to see you again. Thank you. Well done to both counsels. Thank you. Well done. And the court will stand adjourned.